YONTS *v.* PUBLIC SERVICE COMPANY OF ARKANSAS.

Opinion delivered June 3, 1929.

*Hill, Fitzhugh & Brizzolara,* for appellant.

*Evans & Evans,* for appellee.

MEHAFFY, J.   The Public Service Company of Arkansas filed suit against Mrs. Victoria Yonts and another suit against Mrs. Ethel Bentley, for the purpose of condemning land of the appellants for use as a damsite and reservoir to be constructed by appellee.   The cases were consolidated and tried as one case in the circuit court.

The appellee had an ordinance authorizing it to construct a system of waterworks in the town of Booneville.   The appellants owned land situated at the neck or mouth of a deep gorge, through which a creek ran.

A dam was to be built at the neck of the gorge. The defendants' lands extended some distance up the gorge and in the valley, which land was to be used for reservoir purposes. The land owned by the appellants was adapted for a damsite across the creek. The gorge, having almost perpendicular sides, came to a narrow neck; a creek supplying ample water flowed through this gorge and over lands owned by each of the appellants. The appellee also ran its pipe line across other lands of Mrs. Yonts in constructing its pipe line from its land to the town of Booneville, situated one mile from the reservoir.

According to the evidence, this was the only suitable place for a dam or reservoir anywhere in the vicinity of Booneville.

The jury returned a verdict for $30 per acre for the land owned by Mrs. Bentley, and $25 per acre for the land owned by Mrs. Yonts, and allowed nothing for the land taken for pipe line across the property.

Appellants filed a motion for a new trial, which was overruled, exceptions saved, and an appeal prosecuted to this court to reverse the judgment of the circuit court.

The appellee's witnesses testified as to the value of the lands, fixing the value at from five to thirty dollars per acre, all of them testifying, in substance, that they fixed the value on the land for agricultural purposes. In addition to this, appellee introduced testimony showing the price paid by it for other lands in the vicinity.

The appellants introduced expert witnesses, who testified about the situation of the land, and the narrow gorge, and its value for reservoir and damsite, one witness placing the value at $200 per acre, and the other at at least $100 per acre.

Appellant's first contention is that the court erred in admitting testimony of witnesses who said that they fixed the value for agricultural purposes only, and knew nothing about the value of the land for a damsite. We think this testimony was competent. The measure of

compensation, when property is taken for public use under the power of eminent domain, is the market value of the land, and it is therefore competent, in ascertaining what the market value is, to admit any testimony that tends to show its market value. In speaking of the character of the testimony that is admissible for the purpose of showing the market value of the land, this court said:

"As a general guide to the range which the testimony should be allowed to assume, we think it safe to say that the landowner should be allowed to state, and have his witnesses to state, every fact concerning the property which he would naturally be disposed to adduce in order to place it in an advantageous light if he were attempting to negotiate a sale of it to a private individual. * * * In offering testimony on this issue, the owner was not limited to any pre-existing use of the land. If it was of little value as a farm, or for common uses, and was of great value as mineral land or as a townsite, that fact might be shown, though it had never been so used." *St. L. I. M. & S. R. Co.* v. *Theo. Maxfield Co.*, 94 Ark. 135, 126 S. W. 83, 26 L. R. A. (N. S.) 1111.

Although this testimony was competent, and might be considered by the jury for what it was worth in connection with other testimony, still the owner had the right to obtain the market value of the land, based upon its availability for the most valuable purposes for which it can be used, whether so used or not. In other words, while the testimony of these witnesses as to the value was admissible, the owners in this case had the right to a judgment for the market value of the land for a damsite and reservoir, and not for agricultural purposes. They had the right to have a judgment for its value based upon its availability as a damsite and reservoir. *Ft. Smith & Van Buren Dist.* v. *Scott*, 103 Ark. 405, 147 S. W. 440; *Gurdon & Ft. Smith Rd. Co.* v. *Vaught*, 97 Ark. 234, 133 S. W. 1019; *St. L. I. M. & S. R. Co.* v. *Theodore Maxfield Co.*, 94 Ark. 135, 126 S. W. 83, 26 L. R. A. (N. S.) 1111.

It is next contended by appellant that the court erred in admitting testimony as to what other lands in the vicinity cost plaintiff. This testimony was not competent. This court and many others have held that it is proper to admit testimony as to the price at which other lands in the vicinity sold, together with testimony as to the similarity or dissimilarity of the lands, but that means sales in the ordinary course of business, and not sales to the service company who were seeking to condemn land for their dam and reservoir. Evidence showing what the company seeking to condemn has paid for other lands would probably be taken by the jury as indicating the market value, when, as a matter of fact, it does not tend to show the market value of the land. A company condemning land might be willing to give more than it was worth and the owner of land might be willing to take less than it is worth, that is, less than its market value, rather than have a lawsuit. Moreover, when a company seeks to get land or condemn it for public uses, having the power to condemn, the landowner would probably come to some agreement with him rather than have a lawsuit, and this agreement would show a compromise rather than the market value of the land.

"What the party condemning has paid for other property is incompetent. Such sales are not a fair criterion of the value, for the reason that they are in the nature of a compromise. They are affected by an element which does not enter into similar transactions made in the ordinary course of business. The one party may force a sale at such a price as may be fixed by the tribunal appointed by law. In most cases the same party must have the particular property, even if it costs more than its true value. The fear of one party or the other to take the risk of legal proceedings ordinarily results in the one party paying more or the other taking less than is considered to be the fair market value of the property. For these reasons, such sales do not seem to be competent evidence of the value in any case, whether

in a proceeding by the same condemning party, or other cases." Lewis on Eminent Domain, 3 ed. vol. 2, § 667.

"One Lemaster, who was connected with the Union Railway Company, and who had estimated on the witness stand the property of Maudlin to be worth about $100 per acre, was asked about this sale, and, over the objection of the counsel of the Union Railway Company, was permitted to say that the land company received as the purchase price of this land $1,000 per acre. Other witnesses introduced by the plaintiff in error to testify as to the value of the Maudlin property were permitted, notwithstanding the objection of the counsel of the railway company, to testify fully as to that sale. A reversal is now asked upon the ground that this testimony was both incompetent and prejudicial. Under the facts disclosed, we think it was clearly prejudicial to the rights of the plaintiff in error, and it is equally clear that this testimony should not have come to the jury." *Coate* v. *Memphis R. Term. Co.*, 120 Tenn. 525, 111 S. W. 923.

"It is entirely apparent to us, and must have been to the jury, that some agreement had been entered into by which the owners of the north one-third of the ground had agreed to accept as compensation a sum fixed by the evidence for the petitioner as the market value of that property. The law is that it is not competent to prove what the petitioner has paid for other property purchased by it for use in the same enterprise. The property owner, realizing the power of the petitioner to take his property, may prefer to take less than the real value rather than incur the expense of a litigation, where he can in no event obtain more than its actual value. As is said by the authorities, such a sale is in the nature of a compromise, and, for that reason, is not a fair measure of value." *So. Park Commissioners* v. *Ayer*, 237 Ill. 211, 86 N. E. 704.

There are many authorities to the same effect. While a few courts have held that testimony of this character is admissible, the weight of authority seems

to be that it is not only incompetent, but prejudicial. The jury might very naturally conclude that the price paid for other lands by the petitioner would indicate a fair market value of the land sought to be condemned, and the testimony as to what the appellee had paid for other lands was therefore incompetent and prejudicial.

Appellee calls attention to the case of *St. L. I. M. & S. R. Co.* v. *Theo. Maxfield Co.,* 94 Ark. 135, 126 S. W. 83, 26 L. R. A. (N. S.) 1111, and argues that this case sustains him in the contention that this testimony was admissible. In the case relied on by appellee, however, the record does not show that there was any purchase by the petitioner of other lands to be used in the same enterprise, but all that it does hold is that testimony relative to the value of certain lands in the neighborhood of the land sought to be condemned is admissible by way of comparison. And in this case, the sale of other lands in the community, made in the ordinary way, would be admissible. However, as we have already said, the appellants are entitled to the market value for any purpose for which the land can be used. This necessarily means the highest market value for any purpose to which it may be devoted. The landowner is of course entitled to compensation for land used to lay pipe lines.

The court permitted the evidence of witnesses showing the price paid per acre for other lands purchased by appellee, to be used in the same enterprise. As we have already said, this was error, and for this error the judgment must be reversed, and the case remanded for a new trial. It is so ordered.