ARKANSAS STATE HIGHWAY COMMISSION *v.* Roland A. BARKER, Jr., and Barbara Barker, and Union State Bank, Mortgagee

96-227                                    931 S.W.2d 138

Supreme Court of Arkansas
Opinion delivered October 28, 1996

*Robert L. Wilson*, Chief Counsel and *Barbara A. Griffin*, Staff Attorney, for appellant.

*Ronald L. Griggs*, for appellees.

ROBERT H. DUDLEY, Justice. In January 1994, the Arkansas State Highway Commission condemned .47 acre in fee, along with the access routes, belonging to Roland and Barbara Barker and Union State Bank, mortgagee, in order to widen Highway 167 to three lanes south of El Dorado. The condemned land was a part of a 10.16-acre tract purchased by the Barkers in 1992 for $20,000. A little over seven acres of the tract were timberland and not suitable for industrial or commercial use, and three acres were suitable for commercial or industrial use. The .47 acre condemned is in the three acres that are suitable for commercial or industrial use. Before the taking, the Barkers constructed a metal building in the northeast corner of the three acres. The .47 acre is between the metal building and the highway. At the time of the taking, the Commission deposited with the court the amount it estimated to be just compensation, $1,450. The Barkers denied that $1,450 was just compensation and asked for adequate compensation. Ultimately, a jury returned a verdict for $15,100. The Commission appeals. We reverse and remand for a new trial.

The Commission timely filed a motion *in limine* asking the court to prohibit, among other things, the introduction of evidence proving the cost to cure damages to the residual property, if the cost was in excess of the decrease in the market value of the property taken and if the cost constituted a substantial betterment to the property. In its motion the Commission specifically alleged that the

Barkers' appraisal report contained two estimates, one for $6,800 and one for $7,875, which when averaged was $7,300, for installation of a circular drive on the residual tract. An additional $3,000 was added for maintenance of the circular driveway, which brought the total betterments to $10,300. The Commission pointed out that, before the taking, the tract had sixteen feet of unpaved driveways that provided access to the highway and that the Commission's construction plans, filed with the court, required it to replace the unpaved driveways with two forty-foot asphalt driveways. Finally, the Commission alleged that if the utility of the residual property was diminished by the taking, that loss constituted the element of damage, and not the cost of a circular driveway, which was a betterment and which cost far more than the loss to the remaining property, especially when the Commission intended to replace sixteen-feet-wide unpaved driveways with forty-feet paved driveways. On appeal, the Commission contends that the trial court erred in allowing evidence of the $10,300 loss to be introduced. The Barkers do not contend that evidence of the cost to cure damages was admissible, but rather they respond that the Commission is "simply mistaken that testimony was offered as costs to cure damages which constitute a betterment on the residual property." We hold the trial court erred in allowing the evidence.

■ A landowner who has his land condemned is entitled to just compensation. *City of El Dorado v. Scruggs*, 113 Ark. 239, 168 S.W. 846 (1914). However, this does not mean that a landowner is entitled to be unjustly enriched at the expense of the public purse. *See United States v. 158.24 Acres of Land*, 696 F.2d 559, 564 (8th Cir. 1982). There are three recognized formulas for measuring just compensation in partial-taking cases: (1) the value of the part taken; (2) the value of the part taken plus the damages to the remainder; (3) the before- and after-value rule. *Young v. Arkansas State Highway Comm'n*, 242 Ark. 812, 415 S.W.2d 575 (1967); *see also Arkansas State Highway Comm'n v. Jones*, 256 Ark. 40, 505 S.W.2d 210 (1974). In *Young*, we wrote that "the difference between the market value of the whole tract before the taking, and the market value of that part which remains after the taking, less any enhancement peculiar to the lands" has long been the measure of damages in partial-taking cases. 242 Ark. at 814, 415 S.W.2d at 576-77.

■ In the present case, the Barkers' real-estate-appraisal witness, Peter Emig, testified that the .47 acre taken did not have a

"single highest and best use," but rather "that which was a part of the taking had a commercial/industrial type use because of elevation and proximity to the highway." Emig testified that he used three approaches in determining the before-taking value: the cost approach; the market approach; and the income approach. He testified that, in this case, the market approach was the best indicator of value. Using the market approach, he determined that the before-taking value was $105,000. He also testified that the market approach was the best indicator of value after the taking, and that value was $89,900, leaving a difference of $15,100. The trial court allowed his appraisal report in evidence. In his report, the witness used three comparable sales to determine after-taking value, but from each of the three comparable sales he deducted "$10,300 for the drive installation and maintenance." Thus, Emig deducted the $10,300 cost and maintenance of the circular drive in order to reach the after-taking value. Because of this error, we reverse and remand for a new trial.

We now address the remaining points of appeal that will likely arise upon retrial. The Barkers, in cross-examination of a Commission employee, asked about an appraisal of a nearby tract. The Commission objected because the tract had not been used by either party as a comparable sale, and thus it was not relevant. The Commission additionally objected because the appraisal was prepared for the Commission's condemnation offer on the other tract, and offers to buy are not competent evidence of the market value. The trial court erroneously overruled the objections. The appraisal of the nearby tract, prepared by a witness not present at trial, was prepared for determination of the amount to be deposited by the Commission for the taking of the other tract. Even if the court deposit made by a condemnor might be considered a "sale," a point we do not decide, a sale made by a condemnor is not deemed a voluntary transaction. "[S]ales to one having the right of eminent domain do not ordinarily fall in the category of voluntary sales in the ordinary course of business and, consequently, are not fair criteria of value for purposes of comparable sales in determining the just compensation due in eminent domain actions." *Arkansas State Highway Comm'n* v. *First Pyramid Life Ins. Co.*, 265 Ark. 417, 424, 579 S.W.2d 587, 591, *reh'g denied* (1979). In *Yonts* v. *Public Service Co. of Arkansas*, 179 Ark. 695, 17 S.W.2d 886 (1929), we explained:

"What the party condemning has paid for other property is incompetent. Such sales are not a fair criterion of the value, for the reason that they are in the nature of a compromise. They are affected by an element which does not enter into similar transactions made in the ordinary course of business. The one party may force a sale at such a price as may be fixed by the tribunal appointed by law. In most cases the same party must have the particular property, even if it costs more than its true value. The fear of one party or the other to take the risk of legal proceedings ordinarily results in the one party paying more or the other taking less than is considered to be the fair market value of the property. For these reasons, such sales do not seem to be competent evidence of the value in any case, whether in a proceeding by the same condemning party, or other cases." Lewis on Eminent Domain (3 Ed.) vol. 2, § 667.

*Id.* at 698-99, 17 S.W.2d at 887.

The Commission also contends that the trial court erred in not striking Roland Barker's testimony about value of the tract condemned because he failed to state any reasonable ground for his opinion. Upon retrial, Barker may be able to state better grounds for his opinion, since he has lived in the area for fifty years and since he and his wife recently purchased the tract involved. Because the same proof may not develop upon retrial, we do not address the argument. *Missouri Pac. R.R. Co. v. Arkansas Sheriff's Boys' Ranch,* 280 Ark. 53, 655 S.W.2d 389 (1983).

■ The Commission asks us to reverse this case with instructions for remittitur to the amount of $1,450, the amount of its appraisal and the amount of its deposit. We decline to order remittitur and instead order a new trial. We have examined both the landowners' and the Commission's proof of values and have concluded that the appropriate amount of damages is still of such question that an order of remittitur is not appropriate. One factor causing a question is that the Commission's proof determined the values as of the date of taking, January 1994, but the landowners' appraiser valued the property as of April 14, 1995, over fifteen months after the taking. The measure of damages in partial-taking cases is the difference between the market value of the whole tract *before the taking* and the market value of that part which remains *after the taking*, less any enhancements peculiar to the lands. *Young v.*

*Arkansas State Highway Comm'n*, 242 Ark. 812, 415 S.W.2d 575 (1967). Here, the testimony showed that a $10,000 concrete slab was poured on the landowners' three-acre commercial land in the intervening fifteen months and that the landowners' proof took that expenditure into consideration. We do not know if there were other such enhancements or betterments and thus are unable to determine an appropriate amount of remittitur.

Reversed and remanded.

NEWBERN and CORBIN, JJ., dissent.

DAVID NEWBERN, Justice. The point on which the majority opinion bases reversal of the jury's verdict and the Trial Court's judgment is the inclusion in Mr. Emig's appraisal of the $10,300 figure relating to the need for a circular driveway on the Barkers' property.

According to Mr. Emig's appraisal report and his testimony, he settled on the market value approach to evaluation of the Barkers' property before and after the taking. A part of the loss of market value, he testified, is loss in utility of the property.

Mr. Emig figured the after-taking value of the Barkers' land on the basis of comparable sales. To the value of the land taken, he added value for other land that would remain in the Barkers' tract as well as for improvements on the tract. He subtracted the $10,300, which amounted to the cost and maintenance of a circular drive.

Mr. Emig's testimony indicated that, prior to the taking, trucks had been able to enter the property and unload large items using fork lifts at the business entrance but that after the taking they would no longer be able to do so. The circular drive would be needed to permit that use to continue. Although he used the cost approach to determine that aspect of the reduction in the property's market value, I see nothing exceptionable about it.

The fact that the Highway Department planned to widen the sixteen-foot-wide gravel-covered culvert entrances to the property to forty-foot ones covered with asphalt was not shown to affect the problem of the reduction in utility, which Mr. Emig said would occur as a result of the taking of the land right at the front of the Barkers' business. I would affirm the judgment based on the jury's verdict.

I respectfully dissent.

CORBIN, J., joins.