2010 Ark. App. 234

**ARKANSAS STATE HIGHWAY COMMISSION, Appellant**

v.

**James R. LEWIS, III, Appellee.**

**No. CA 09–983.**

Court of Appeals of Arkansas.

March 10, 2010.

Charles A. Dirdern, Little Rock, for appellant.

Lawrence Wayne Jackson, Marion, for appellee.

**M. MICHAEL KINARD, Judge.**

In this condemnation case, the Arkansas State Highway Commission (the Commission) appeals the circuit court's order awarding appellee James R. Lewis III, Trustee of the Agreement for the Benefit of James R. Lewis III, a total of $190,000 plus interest for two tracts of real property. On appeal, the Commission argues that (1) the court abused its discretion by admitting a sale from Louise Wilson to Joe Drace into evidence as a comparable sale and (2) without that evidence, the jury's

verdict is not supported by substantial evidence. We affirm.

The two properties at issue lie along a highway in Crittenden County and Poinsett County. On February 12, 2004, the Commission filed a declaration of taking in Crittenden County Circuit Court condemning real property referred to as Tract 16, Job No. 110434, which consisted of 0.40 acres. The Commission estimated the amount of just compensation for the property at $17,025. On May 14, 2004, the Commission filed a complaint and declaration of taking in Poinsett County Circuit Court seeking to condemn 0.66 acres of land, Tract 6, for use in Job No. 100547 at the Highway 135 Interchange. The Commission estimated that $1200 was just compensation for the property. These two takings by the Commission were for the purpose of constructing a controlled-access facility.[1]

Appellee disputed the Commission's estimate of the just compensation for the properties. The two cases were consolidated in Poinsett County Circuit Court, and a jury trial was held to determine the value of the property taken. Eric Scruggs, a real-estate appraiser for the Arkansas State Highway and Transportation Department, testified regarding his appraisal reports on the properties at issue. Scruggs testified that his appraiser's license, which he was not required by the highway department to have, was on inactive status due to the cost of keeping the license active. Without a current appraisal license, Scruggs agreed that he would not be able to perform an appraisal on a farm that was worth over $300,000, nor would he be able to perform an appraisal for anyone in the state other than the Arkansas State Highway and Transportation Department. Scruggs stated that he lived in Saline County and had never owned property in Crittenden County or Poinsett County.

Scruggs appraised Tract 6 in 2004 and Tract 16 in 2008. Scruggs used the comparable-sales method to arrive at his opinion of value; he testified that factors he considers in determining comparables include location, size, highest and best use, access, frontage, and the time of the sale. According to Scruggs, access is more important than frontage when it comes to farmland. In his opinion, the highest and best use of the property in question was for agriculture. Although he acknowledged that all three tracts owned by appellee were used as part of one farming operation, he stated that he appraised the property in question without any consideration to the location of the farm headquarters. He did not consider the seventy acres located on the east side of the highway at all, and he made no adjustments for access to the farm headquarters. However, he did not dispute that before the taking and implementation of the highway department's plans appellee had access to the highway and afterward it was a controlled-access highway. Scruggs stated that the comparables he used ranged from $1026 to $1800 per acre, and the more development as a farming unit—e.g., irrigation, precision leveling—the higher the value. The sale that Scruggs relied on most was a sale on Highway 77 for $1800 per acre. He testified that the property in question was completely unaffected by the taking of all access to it from Highway 63. That is, the value of both tracts of real property was $1800 per acre both before

---

1. "A controlled-access facility may be broadly described as a superhighway which motorists can enter and leave only at designated interchanges, usually some miles apart." *Arkansas State Highway Comm'n v. Union Planters Nat'l Bank,* 231 Ark. 907, 908, 333 S.W.2d 904, 906 (1960). *See also* Ark.Code Ann. §§ 27–68–102, 27–68–105(c).

and after the condemnation. Tract 16 was part of an 83.99–acre tract; the 0.40 acres taken included a well that had a replacement cost of $16,300. According to Scruggs, the value of the tract was $151,200 before the taking and $150,450 after the taking, for a total of $17,050 when the well is taken into account. Scruggs testified that Tract 6 was part of a 137.66–acre tract, making its value $247,800 before the taking and $246,600 after the taking; the difference between the before and after value was $1200.

Glenn Eaton, a certified general appraiser with an active license, testified that his relevant experience included five years working for the Federal Land Bank, during which time he was trained and licensed to do farm and agricultural appraisals; managing and appraising Equitable Agri-Business's farm properties; farming; and buying and selling land, including farm land, in Poinsett, Crittenden, and Cross Counties for the last twenty-five years. Eaton stated that he was familiar with the market values of real estate in Poinsett County and northern Crittenden County, and in fact restricted his appraisal business to properties in eastern Arkansas because he did not like to appraise properties in areas with which he was not familiar.

Eaton testified that he appraised the property in question in this case and determined that its value before the taking was $1800 per acre and after the taking was $1100. He calculated that the diminution of value for all tracts was $190,000. Eaton testified that he properly considered the seventy-two acres on the east side of the highway, which Scruggs did not consider, because it had the same owner and was contiguous to the other tracts. After the taking and the implementation of a controlled-access highway, travel time be-tween the three tracts increased substantially—from around two minutes to over an hour to get from Tract A to Tract C. Eaton testified that this increase would substantially impact the value and ease of management.

Eaton used the comparable-sales approach, including four comparable sales from the same sales brochure that the highway department used, and the income approach to arrive at his opinion of value. The sales Eaton used ranged from approximately $1050 per acre to $2400 per acre.[2] The first comparable sale was twenty-two acres that sold for $1781 an acre; its highest and best use was agricultural, and it was located on Highway 77. Eaton did not put much weight on the second sale, which he adjusted down by $2000 an acre (from $4400) because of what he considered to be commercial development along the access road on the property. The third sale consisted of seventy acres of agricultural land that sold for $1800 an acre in 2001. Eaton testified that he believed this was the best indicator of value of the property in question prior to the government taking. The fourth sale was 9.7 acres that sold for $1855 per acre and was predominantly agricultural in use. Based on these four sales, Eaton determined that the value of appellee's 280 acres, at $1800 per acre, was $504,000 before the taking.

When Eaton was asked about a fifth sale that was included in his appraisal report, the Commission objected on the basis that the sale was not an arm's length transaction. The court allowed appellee's attorney to attempt to lay a foundation. In the fifth sale, Joe Drace, the long-time lessor of appellee's land, purchased property from Louise Wilson in April 2005. Eaton testified that in his investigation he

---

**2.** Actually, the higher-end sale was $4400 per acre, but Eaton deducted $2000 an acre be-cause that property was located on an access road.

spoke to Drace and learned that there were no written contractual obligations between the buyer and seller, it was not a forced sale, and the property was not in foreclosure. Eaton stated that there was nothing to indicate that Drace got a better deal than anybody else would have gotten on the property. The Commission was then permitted to voir dire the witness. The voir dire examination established that before Ms. Wilson's death, Drace informed her that he would like to have the first opportunity to buy her property if she ever wanted to sell it. After Ms. Wilson's death, her family approached Drace and offered to sell it to him for $1100 an acre, which he accepted. To Eaton's knowledge, the property was not placed on the open market for anyone to bid on. In Eaton's opinion, this was an arm's length transaction and represented the fair market value because "[i]t only takes a buyer and a seller to make a fair market." Before Drace bought the property, he precision leveled it and "probably" put a well in, improvements for which he was not paid. Eaton stated that it is not uncommon for long-term tenants who have farmed land for twenty or thirty years to do those kinds of improvements for their landlords. The court overruled the Commission's objection, holding that it was for the jury to decide whether this was an arm's length transaction.

Eaton testified that this sale to Drace was indicative of the value of the property after the taking and reflected the lack of access. This was the only sale that he found in the area after the access to the highway was severed and the highway became controlled access. Eaton testified that the value he put on the property after the taking was $294,560 and the diminution of value indicated by the comparable-sales approach was $209,440. However, he also considered the income approach, for which he surveyed farmers and tenants regarding the rent in the area. Eaton explained to the jury his process of using an average rent of $100 per acre for a 280-acre tract with no impediment on access compared to $75 per acre for three different tracts—72, 84, and 124 acres—that were not contiguous and required travel of eight to seventeen miles to get to them. Using the income approach, Eaton stated that the diminution of value was $166,667. Eaton stated that he gave more weight to the market approach, and his opinion of the overall diminution of value using both approaches is $190,000. On cross, it was brought out that the rent on appellee's property (25% of crop) was the same as it had been for the past thirty years.

Also testifying were James Lewis and Joe Drace. Appellee Lewis agreed with his appraiser's assessment valuing the two tracts at $190,000. After appellee's testimony, he rested and the Commission moved for a directed verdict and asked that all evidence of the taken land's value of $190,000 be stricken. The circuit court denied the motion. The Commission called Joe Drace, who testified that he had leased appellee's land in exchange for one quarter of the crop since 1971. He still produced the same amount of crops, but doing so was a lot more difficult since the highway had been changed to controlled access. The terms of the lease had not changed, although Drace testified that he had thought about asking appellee for a change. As to his purchase of Ms. Wilson's land, Drace testified that her daughter stated that she wanted $240,000 for the property, which was approximately $1100 per acre, and he had agreed to that price. He had no idea how she had arrived at that number.

█ The jury awarded $133,000 for Tract 6 and $57,000 for Tract 16, for a total judgment of $190,000. The Commis-

sion appeals, arguing that the Louise Wilson to Joe Drace sale was not an arm's length transaction and that the court abused its discretion in allowing evidence of that sale.

Our supreme court has written:

A landowner who has his land condemned is entitled to just compensation. However, this does not mean that a landowner is entitled to be unjustly enriched at the expense of the public purse. [ . . . ] In *Young [v. Arkansas State Highway Comm'n,* 242 Ark. 812, 415 S.W.2d 575 (1967) ], we wrote that "the difference between the market value of the whole tract before the taking, and the market value of that part which remains after the taking, less any enhancement peculiar to the lands" has long been the measure of damages in partial-taking cases.

*Arkansas State Highway Comm'n v. Barker,* 326 Ark. 403, 405, 931 S.W.2d 138, 140 (1996) (citations omitted). The question of whether the conditions surrounding another tract of land or its sale are sufficiently similar to the circumstances of the pending case and the land involved to admit evidence of its sale price as evidence of the value of the land in question rests largely in the discretion of the trial court; the ruling of the trial court on the question should be disturbed only for abuse of that discretion. *Arkansas State Highway Comm'n v. N.W.A. Realty Corp.,* 262 Ark. 440, 444–45, 557 S.W.2d 620, 622 (1977). The parties in this case do not dispute the measure of just compensation. The issue is whether the circuit court abused its discretion in allowing Eaton to testify regarding the sale from Ms. Wilson's family to Joe Drace. This transaction was the basis of his determination of the fair-market value of appellee's property after the taking under the comparable-sales approach. However, we note that there was other evidence supporting the $1100–per–acre value. The Commission's own expert testified that the comparable sales he used in his appraisal began at $1026, which is right in line with the "after" figure arrived at by the jury. There was testimony from Eaton that the three tracts owned by appellee should be considered a unit, and because of the severance of the unit the value of the land was impacted negatively.

Before concluding that the Wilson–Drace sale was not an arm's length transaction, the Commission points to the following facts: Drace requested of Ms. Wilson before she died that he get the first opportunity to buy the property; after her death, her family offered to sell it to him for $1100 an acre; Drace had made certain improvements to the property without charge; and the fact that neither Eaton nor Drace had any knowledge of the property being "put on the market." The Commission seems to argue that because the Wilson land was not "put on the market"—in the sense of being advertised for sale and offers from the general public being solicited—and the Wilson family possibly felt some sense of obligation to sell the land to Drace, the sale was not an arm's length transaction. However, as Eaton and Drace testified, there was no evidence that the family was obligated to sell the property to Drace, and the family (the sellers) set the price. We have not found, nor does appellant cite, any authority for the proposition that the Wilson–Drace sale was not an arm's length transaction as a matter of law. Therefore, the weight to be given Eaton's testimony, considering his reliance on the Wilson–Drace sale, was for the jury. *Arkansas State Highway Comm'n v. Highfill,* 250 Ark. 291, 293, 464 S.W.2d 784, 785 (1971) ("On the basis of disclosures made with reference to the respective tracts we are unable to say that they are not comparable as a

matter of law. Consequently, the weight to be given Yarborough's testimony was for the jury.").

Affirmed.

VAUGHT, C.J., and GRUBER, J., agree.