SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-2014-65

| | |
|---|---|
| | **Opinion Delivered** September 24, 2014 |
| CITY OF JACKSONVILLE, ARKANSAS | |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION |
| V. | [NO. 60CV-10-5486] |
| | |
| GRAHAM DEWITT NIXON, WALTER W. NIXON III, and DANA NIXON | HONORABLE WENDELL L. GRIFFEN, JUDGE |
| APPELLEES | AFFIRMED |

**ROBERT J. GLADWIN, Chief Judge**

This eminent-domain action returns to this court after a previous dismissal for lack of a final order. *City of Jacksonville v. Nixon,* 2013 Ark. App. 302. The City of Jacksonville ("City") claims that the circuit court's order merits reversal because of an irregularity in the proceedings and improper damages awards. After considering each of the City's arguments, we affirm the circuit court's ruling in its entirety.

On September 17, 2010, and pursuant to Arkansas Code Annotated section 18-15-201 (Repl. 2003), the City filed an application for condemnation and a request for immediate possession against several defendants including Graham Dewitt Nixon, Walter W. Nixon III, and Dana Nixon ("Nixons"). The City sought partial condemnation of twelve parcels of property for the Graham Road Project. The project would create a four-lane road with sidewalks and replace and relocate utility lines. The Nixons owned three parcels of the land

SLIP OPINION

to be condemned–Tracts 35, 36, and 74. The circuit court issued an order of immediate possession on September 28, 2010. Later, an amended and agreed order of immediate possession was filed wherein the Nixons agreed that the City had the authority to take immediate possession of their property but reserved adjudication of their additional monetary-damages claims.

The circuit court held a bench trial to determine the Nixons' just compensation and awarded the Nixons a total of $73,868.84 in damages in an order entered on April 3, 2012. The City appealed the circuit court's order, and this court dismissed the appeal because the order was not final. *City of Jacksonville, supra*. Upon return to the circuit court, a judgment and Rule 54(b) certificate were entered as to the Nixons on September 26, 2013. The substance of this judgment was the same as the order rendered in April 2012. The City's timely appeal followed.

## I. *Standard of Review*

In reviewing the findings after a bench trial, we reverse only if the findings are clearly erroneous or clearly against the preponderance of the evidence. *CenterPoint Energy Gas Transmission Co. v. Green*, 2012 Ark. App. 326, at 9, 413 S.W.3d 867, 873. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake was committed. *Id.*



## II. *Irregularity in the Proceedings*

The City proceeded first in the trial of this matter and contends that this caused an irregularity in the proceedings necessitating reversal. Arkansas Code Annotated section 16-64-110(3)(a) (Repl. 2005) requires the party with the burden of proof to produce his or her evidence first. In eminent-domain proceedings, it has long been the law in this state that the defendant is accorded the opening and conclusion of a case. *Springfield & Memphis Ry. v. Rhea*, 44 Ark. 258 (1884). The extent of the damage is the object of the inquiry, and the landowner bears the burden of proving this. *Id.*; *see also Ark. State Highway Comm'n v. Post*, 330 Ark. 369, 372–73, 955 S.W.2d 496, 498 (1997).

The circuit court clearly failed to conduct this trial in the procedurally appropriate manner. However, we do not reach the merits of this issue. No objection to the irregularity was raised during the trial of this matter. The City raised its objection in a motion for new trial. However, the City's notice of appeal was filed before its motion for new trial was deemed denied. Therefore, the City's failure to amend its notice of appeal to include the circuit court's denial of the new-trial motion left only the circuit court's final order of September 2013 for our review. A notice of appeal should designate the judgment, decree, order or part thereof appealed from. Ark. R. App. P.–Civ. 3(e)(ii). It must be judged by what it recites and not what it was intended to recite, and it must state the order appealed from with specificity as orders not mentioned in it are not properly before the court. *Ark. Dep't of Human Servs. v. Shipman*, 25 Ark. App. 247, 756 S.W.2d 930 (1988). The City's challenge to the irregularity was not preserved for our review.

SLIP OPINION

## II.  *Damages*

### A.   The Living Fence

The circuit court awarded $41, 226.25 in damages as compensation for the destruction of a living fence on Tract 36.  In partial-takings cases, the landowner is entitled to the value of the lands taken, plus damages to the lands not taken.  *Young v. Ark. State Highway Comm'n*, 242 Ark. 812, 415 S.W.2d 575 (1967).  There is no Arkansas case law regarding living fences, but guidance from another jurisdiction provides that "[p]eople do have a basis in common practice and understanding for knowing what a fence is," and "if the growth serve[s] the purposes of confinement, means of protection or use as a boundary, it would constitute a 'fence.'" *Town of Clyde Hill v. Roisen*, 767 P.2d 1375, 1378 (Wash. 1989).  The removal of the trees on Tract 36 is compensable if it caused damage to the lands not taken.

For years, the property was marketed and rented as an event center—the Nixon Flower Farm.  Dana Nixon testified that the  condemnation of Tract 36 resulted in the removal of trees that operated as a living fence and made the property a desirable event venue.  She claimed that the trees provided noise and sight protection by blocking the view of the house and the gardens.  She further contends that the lack of privacy caused by the removal of the trees lessened the value of the property.  The City's witnesses asserted that it fully compensated the Nixons for the loss of the trees and testified that the trees on Tract 36 were nondescript, of varying sizes, and did not act as a living fence.  Facts in dispute and determinations of credibility are solely within the province of the fact-finder.  *City of Rockport v. City of Malvern*, 2010 Ark. 449, at 6, 374 S.W.3d 660, 663. There is sufficient evidence to

support the circuit court's finding that Tract 36 included a living fence and that the removal of the fence caused damages to the lands.

We now determine whether the award of $41,226.25 for the living fence was clearly erroneous. The Nixons must show the value of the loss because establishment of the value of loss is a requirement for an award of damages. *Revels v. Knighton*, 305 Ark. 109, 805 S.W.2d 649 (1991). The Nixons provided an estimate from Bemis Tree Service for $41,226.25 representing the amount it would charge to plant trees and shrubbery and begin restoring the living fence. Dana Nixon testified that this estimate did not represent the replacement value of the trees taken because the estimate would only begin to fill in the dense screen that was previously on the property. The City argues that the Nixons are seeking reimbursement for the value of the trees and shrubs taken, which is contrary to the law.[1] The evidence from Bemis as well as the testimony and exhibits provided by Dana Nixon support a finding that $41,226.25 did not represent the replacement value of the trees taken and was, instead, evidence of the value of their loss. It was not clearly erroneous for the circuit court to conclude that the $41,226.25 was the value of the Nixon's loss.

B. Permanent Easements

The City took three permanent easements on the Nixons' property and determined that their value was $23,450, and the Nixons offered evidence to support a higher valuation. The circuit court awarded $29,992.59 as just compensation for the permanent easements. In partial-takings cases, just compensation is "the difference between market value of the

---

[1]*Cramer v. Ark. Okla. Gas Corp.*, 316 Ark. 465, 468, 872 S.W.2d 390, 392 (1994).

whole tract before the taking, and market value of that part which remains after the taking, less any enhancement peculiar to the lands." *Ark. State Highway Comm'n v. Lewis*, 2010 Ark. App. 234, 374 S.W.3d 214 (*quoting Young v. Ark. State Highway Comm'n*, 242 Ark. 812, 415 S.W. 2d 575 (1967)); *see also Ark. State Highway Comm'n v. Barker*, 326 Ark. 403, 931 S.W.2d 138 (1996).

The Nixons bore the burden of proving that the City's valuation of the property was inadequate. A landowner intimately familiar with her property is unquestionably qualified to state an opinion about its value. *Ark. State Highway Comm'n v. Russell*, 240 Ark. 21, 398 S.W.2d 201 (1966). Comparable sales can be used to establish market value, and factors considered in determining whether a sale is comparable include location, size, sales price, conditions surrounding the sale, business and residential advantages and disadvantages, and whether the land is improved, unimproved, or developed. *Ark. State Highway Comm'n v. Roberts*, 250 Ark. 80, 464 S.W.2d 57 (1971). Dana Nixon testified as the owner of the property and was qualified to render an opinion regarding its value. She is a lawyer, real–estate investor, developer, and builder and has developed two residential subdivisions in the area near the condemned properties. When explaining how she determined the value of her properties, she testified about several properties that she believed were comparable to hers, and she also explained why she thought the comparables used by the City were not appropriate. The City presented testimony from Karen Cummins and Scott Wroten to support its valuation of the tracts. Again, facts in dispute and determinations of credibility are solely within the province of the fact-finder. *City of Rockport*, 2010 Ark. 449, at 6, 374

S.W.3d at 663. The circuit court could have easily found the Nixons' opinions regarding property values to be persuasive, and the decision to award $29,992.59 for the permanent easements was not clearly erroneous.

## C. Temporary Easements

The City took three temporary construction easements on the Nixons' property and determined that just compensation for them was $375 on the basis of a two-year rental. After considering the evidence, the circuit court awarded $1,325 as just compensation for the temporary-construction easements. The value of a temporary easement is the "fair rental value of the property for the time that it is used." *City of Fort Smith v. Findlay*, 48 Ark. App. 197, 893 S.W.2d 358 (1995). Dana Nixon testified that after over one year and five months, the project was still in its beginning stages, so she calculated the temporary easements for a period of three years. To accept that calculation of time would not be clearly erroneous as she offered evidence that it was likely that the project would take longer than originally estimated. Dana Nixon also offered testimony that she thought the easements were undervalued after looking at similar rental contracts for temporary easements in Jacksonville. The circuit court's finding that the evidence supported a $1,325 award of damages was not clearly erroneous.

## D. Interest

The City contends that the circuit court erroneously awarded pre- and post-judgment interest to the Nixons. We decline to address this issue because the City first raised this argument in its reply brief. This court will not address arguments raised for the first time in

7



an appellant's reply brief because the appellee is not given the chance to rebut the argument.

*Coleman v. Regions Bank*, 364 Ark. 59, 72–73, 216 S.W.3d 569, 579 (2005).

After considering each of the arguments above, we find no error presented on appeal and affirm.

Affirmed.

WOOD and BROWN, JJ., agree.

*Robert E. Bamburg*, for appellant.

*Giles Law Firm, P.A.*, by: *Stephen P. Giles*, for appellees.