

Cite as 2014 Ark. 144

# SUPREME COURT OF ARKANSAS

No. CV–12-1011

| | |
|---|---|
| GSS, LLC<br>APPELLANT | **Opinion Delivered** April 3, 2014 |
| V. | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. CV-2010-258-I] |
| CENTERPOINT ENERGY GAS TRANSMISSION COMPANY<br>APPELLEE | HONORABLE LYNN WILLIAMS, JUDGE |
| | <u>AFFIRMED</u>. |

**CLIFF HOOFMAN, Associate Justice**

In this condemnation case, appellant GSS, LLC ("GSS") appeals from the jury verdict awarding it $64,000 as just compensation for a pipeline-easement taking by appellee CenterPoint Energy Gas Transmission Co. ("CenterPoint"). On appeal, GSS argues (1) that the circuit court abused its discretion in excluding evidence of value of a contiguous parcel of land; (2) that the circuit court erred in granting summary judgment in favor of CenterPoint on GSS's counterclaim because CenterPoint proceeded under a wholly or partially preempted statute; and (3) that the circuit court erred in granting summary judgment to CenterPoint because CenterPoint proceeded under color of law to deny CSS's rights. We assumed jurisdiction of this case pursuant to Ark. Sup. Ct. R. 1-2(b)(1) and (6), as it involves issues of first impression and statutory interpretation. We affirm.

CenterPoint, a gas pipeline company that has the power of eminent domain pursuant to section 7 of the Natural Gas Act of 1938 ("NGA") and Arkansas Code Annotated §§ 18-

15-1301 et seq., and 23-15-101 et seq., began negotiating in June 2009 to purchase a right-of-way easement on GSS's property in order to construct a new pipeline. After CenterPoint and GSS were unable to agree on the compensation to be paid for the easement, CenterPoint filed a petition to condemn the property on February 19, 2010, alleging that it was authorized under its "Certificate of Conveyance and Necessity" issued by the Federal Power Commission to acquire the property at issue by eminent domain, as it was necessary to the construction or operation of its business. CenterPoint further alleged that the determination of just compensation to GSS was likely to materially prejudice and retard the progress of the construction and asked the court to designate an amount of money to be deposited by CenterPoint into the registry of the court for the purpose of ascertaining such compensation and for an order of possession, allowing it to enter and take possession of the subject property to proceed with the construction of the pipeline. CenterPoint also filed a Declaration of Taking, and an affidavit in support of its order of possession, in which it averred that the value of the right-of-way easement was estimated to be $64,000. The description of the property attached to CenterPoint's documents showed that the proposed easement consisted of a twenty-foot-wide right-of-way, which was to run directly adjacent to an already existing twenty-foot easement for a gas pipeline that had been in place since at least 1949, as well as a forty-by-forty-foot work site and an access road.

On February 19, 2010, the circuit court entered an order of possession, finding that CenterPoint's petition to condemn should be granted and that the estimated just compensation for the easement on GSS's property in the amount of $64,000 had been

deposited into the registry of the court. On March 15, 2010, GSS filed an answer to the petition to condemn and the declaration of taking. GSS also alleged counterclaims against CenterPoint for unlawful taking, violation of the Arkansas Civil Rights Act of 1993, trespass, and outrage. Although GSS filed a motion for a preliminary injunction on May 17, 2010, it voluntarily withdrew the motion following a hearing. A second motion for a preliminary injunction was then filed by GSS, and a hearing was set for August 2010; however, GSS again withdrew the motion as moot after CenterPoint entered the property prior to the hearing date.

CenterPoint filed a motion to dismiss GSS's counterclaims, and GSS then filed a motion for summary judgment, asserting that CenterPoint's petition to condemn should be dismissed because it had proceeded under a wholly or partially preempted state statutory scheme and also because it had failed to comply with the prerequisites set forth in the NGA, 15 U.S.C. § 717f(h). On June 30, 2011, the circuit court denied both CenterPoint's motion to dismiss and GSS's motion for summary judgment; however, the court found that the Arkansas condemnation statutes and procedures followed by CenterPoint were constitutional.

On March 27, 2012, CenterPoint filed its own motion for summary judgment on GSS's counterclaims. CenterPoint asserted that GSS had failed to meet its burden of showing that the Arkansas condemnation statutes followed in this case were unconstitutional or preempted by the NGA and that all of GSS's counterclaims therefore failed to create genuine issues of material fact and should be dismissed as a matter of law. In support of its motion, CenterPoint attached excerpts from depositions of its employees and agents, a right-of-way

data sheet, and an appraisal by GSS of the property being taken. In his deposition, Larry Wright, who negotiated with GSS on behalf of CenterPoint, stated that he first met with Guy Collins, GSS's agent, in early June 2009 on GSS's property, which was currently being operated as a nine-hole public golf course. Wright stated that he presented the easement being requested to Collins and that they discussed Collins's specific requests that the putting greens, cart paths, tee boxes, and fairways not be open cut. Wright indicated that CenterPoint agreed to drill under the greens but not the fairways. He stated that Collins had requested that the route of the line be changed, but he told him that the route that had been established by their engineers, which followed the route of the already existing pipeline and easement, was the one that he "had to go with." Wright did state that Collins had requested a small deviation in the route to accommodate the future building site of his home, which CenterPoint approved.

The negotiation over the price for the easement did not go well, according to Wright. CenterPoint first offered $46,000 for the easement, and GSS counteroffered with $464,000. In late September, GSS offered to accept $288,000, while CenterPoint raised its offer to $64,000. Wright stated that he negotiated with Collins on ten to fifteen separate occasions over six or seven months, but they could not reach an agreement. He was told by his supervisor, Richard Brinker, to then turn over the file to CenterPoint's attorney. Wright indicated that he had only one more contact with Collins, when he let him know that CenterPoint was moving in the drilling rig. He stated that another CenterPoint agent also went out and looked at the property to see what could be done to minimize damage.

Richard Brinker, who was Wright's supervisor at CenterPoint, agreed that the two parties were $200,000 apart on the price for the easement when negotiations ceased. He stated that CenterPoint takes the property owner's rights and any rerouting requests into consideration and that Collins did request and obtain a reroute around his future home site. According to Brinker, he received weekly progress reports from all of the agents who were working on the proposed eight-mile pipeline and that there was a completion date across the board, after which CenterPoint would typically file a condemnation proceeding if an agreement was not reached with the landowner. The right-of-way data sheet attached in support of CenterPoint's motion contained notes on the details of Wright's negotiations with Collins and was consistent with the deposition testimony. CenterPoint also attached a portion of the report from GSS's appraiser, Mike Pearce, which concluded that the just compensation for the property being taken was $103,000.

In its response to the motion, GSS contended that there were sufficient issues of material fact to preclude the grant of summary judgment. GSS asserted that CenterPoint had proceeded under a preempted statutory scheme and that the procedure it used in condemning GSS's property violated GSS's constitutional rights. In addition, GSS argued that CenterPoint did not negotiate in good faith as required under the NGA and cited to Wright's and Brinker's deposition testimony that CenterPoint did not agree to change the location of the pipeline across GSS's property. GSS also attached an affidavit by Collins, stating that the property had a current value in excess of $2 million and that he had received inquiries to purchase the property well in excess of that amount. The affidavit further averred that the use

of the property as a golf course would be adversely affected by the construction and that Collins attempted to negotiate in good faith with CenterPoint, offering a reasonably acceptable alternative route for the proposed easement; however, CenterPoint refused to consider the alternative route and would only consider the route it wanted to take.

GSS's response also attached its entire appraisal report, which revealed that its appraiser included the already existing easement in favor of CenterPoint and calculated the total amount of land being taken as 3.36 acres. CenterPoint's appraisal by John Stone, Jr., which was also attached as an exhibit, calculated only the acreage contained in the currently proposed easement, which was 1.731 acres. Stone concluded in his appraisal that the just compensation for the present taking was $32,000.

After a hearing prior to the beginning of the jury trial on July 5, 2012, the circuit court granted CenterPoint's motion for summary judgment on the issues of preemption and due process, ruling that "the process has been observed, it's provided by Arkansas law, and we're going forward on that basis." The trial then proceeded on the sole issue of the amount of just compensation to be paid to GSS for the easement. After hearing testimony by the agents for CenterPoint and GSS, as well as from the parties' two appraisers, the jury awarded GSS $64,000 as just compensation. Judgment to this effect was entered on August 6, 2012, and GSS timely appealed from this order.

In its first point on appeal, GSS argues that the circuit court abused its discretion in excluding evidence concerning the value of a parcel of land that was contiguous to the subject property. GSS sought to introduce this evidence after testimony by CenterPoint's appraiser,

John Stone, in which he discussed the comparable properties used by GSS's appraiser in his report. Apparently, although this ruling is not contained in the record, the circuit court had ruled prior to trial that GSS could not put forth evidence regarding a separate case, *CenterPoint Energy Gas Transmission Co. v. Green*, 2012 Ark. App. 326, 413 S.W.3d 867, which was a condemnation action involving an easement for the same proposed pipeline as in the present case, on property adjacent to GSS's property. After a bench trial before the same circuit judge as in the present case, the just compensation for the easement was found to be $63,100, and this finding was affirmed on appeal. *Id.*

Notwithstanding the circuit court's pretrial ruling, GSS argued that it should now be allowed to introduce evidence on the valuation of the property in *Green* because CenterPoint had opened the door by its expert's testimony regarding comparables. CenterPoint objected, asserting that GSS's appraiser's report had not discussed the *Green* property and that GSS had not supplemented the report. CenterPoint further argued that the *Green* property was not comparable to the property in this case because it was much smaller. The circuit court ruled that it would not allow the *Green* case to control the present case and that it was going to stand on its prior ruling to exclude this evidence. GSS then proffered the testimony that it would have elicited during cross-examination of Stone, who was also CenterPoint's appraiser in *Green*, such as his opinion as to the highest and best use of the *Green* property and his calculation of the just compensation due the landowner in that case.

On appeal, we will not reverse a circuit court's ruling on the admission of evidence absent an abuse of discretion. *Ford Motor Co. v. Washington*, 2013 Ark. 510, ___ S.W.3d ___.

7

SLIP OPINION

An abuse of discretion is a high threshold that does not simply require error by the circuit court, but requires that the court act improvidently, thoughtlessly, or without due consideration. *Id.*

GSS contends that the evidence regarding the valuation of the *Green* property was highly relevant in this case because it involved the very same appraisers, acting in the same capacities, on property contiguous to the property at issue here and because CenterPoint opened the door to the issue by attacking comparable properties. GSS argues that it was prejudiced by the exclusion of this evidence because the jury accepted the valuation of CenterPoint's appraiser and rejected the higher value put forth by its own appraiser.

CenterPoint responds that this evidence was correctly excluded by the circuit court because it was not discussed in either of the appraisal reports in this case and because it was not relevant, given the disparity in sizes of the *Green* property and the property at issue here. CenterPoint further notes that, contrary to GSS's assertion, the jury did not accept Stone's valuation, instead awarding twice that amount as just compensation.

As CenterPoint argues, a party has a duty to supplement its discovery responses pursuant to Ark. R. Civ. P. 26(e)(1) (2013), including the subject matter and substance of an expert witness's testimony. *Ark. State Hwy. Comm'n v. Frisby*, 329 Ark. 506, 951 S.W.2d 305 (1997). Furthermore, we have held that it is error for the circuit court to allow evidence of an appraisal of a nearby tract of land as proof of valuation in a condemnation action because such "sales" are not a fair criterion of value for purposes of showing comparable sales in determining the just compensation due the landowner. *Ark. State Hwy. Comm'n v. Barker*,

326 Ark. 403, 931 S.W.2d 138 (1996); *Ark. State Hwy. Comm'n v. First Pyramid Life Ins. Co.*, 265 Ark. 417, 579 S.W.2d 587 (1979). We stated that what a party condemning has paid for property is not competent evidence of the value in any case, whether in a proceeding by the same condemning party, or in other cases, because such "sales" are not voluntary transactions and are in the nature of a compromise. *Barker, supra* (citing *Yonts v. Public Serv. Co. of Ark.*, 179 Ark. 695, 17 S.W.2d 886 (1929)). Thus, the circuit court did not abuse its discretion in excluding evidence of valuation of contiguous property from a separate case, and we affirm on this point.

In its next two points on appeal, GSS argues that the circuit court erred by granting summary judgment to CenterPoint on GSS's counterclaims. Summary judgment is to be granted by the trial court only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Chamberlin v. State Farm Mut. Ins. Co.*, 343 Ark. 392, 36 S.W.3d 281 (2001). In reviewing a grant of summary judgment, an appellate court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Id.* This court views the evidence in the light most favorable to the party against whom the motion for summary judgment was filed and resolves all doubts and inferences against the moving party. *Id.*

GSS first contends that the condemnation procedures used by CenterPoint in this case are preempted by the provisions of the NGA. The statutes at issue here are 15 U.S.C. § 717f(h), Ark. Code Ann. § 18-15-1303 (Repl. 2003), and Ark. Code Ann. §§ 18-15-1201



through 18-15-1207 (Repl. 2003). The NGA provision, 15 U.S.C. § 717f(h) states as follows:

> (h) Right of eminent domain for construction of pipelines, etc.
> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: *Provided,* That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

Similarly, Arkansas Code Annotated § 18-15-1303 provides with respect to condemnation proceedings in this state:

> In the event any company fails, upon application to individuals, railroads, or turnpike companies, to secure the right-of-way by consent, contract, or agreement, then the corporation shall have the right to proceed to procure the condemnation of the property, lands, rights, privileges, and easements in the manner provided by law for taking private property for right-of-way for railroads as provided by §§ 18-15-1201--18-15-1207, including the procedure for providing notice by publication and by certified mail in § 18-15-1202.

Finally, Arkansas Code Annotated § 18-15-1206, which is titled, "Disputes– Money deposits" states

> (a) In cases in which the determination of questions in controversy in the proceedings is likely to retard the progress of work on or the business of the railroad company, the court, or judge in vacation, shall designate an amount of money to be deposited by the company, subject to the order of the court, for the purpose of making the compensation, when the amount thereof has been assessed and the judge shall designate the place of the deposit.

(b) Whenever the deposit has been made, in compliance with the order of the court or judge, it shall be lawful for the company to enter upon the lands and proceed with the company's work through and over the lands in controversy prior to the assessment and payment of damages for the use and right.

The doctrine of federal preemption is based on the United States Constitution's Supremacy Clause. U.S. Const. art. 6, cl. 2. We have held that preemption can occur in three different ways: (1) express preemption, where Congress defines explicitly the extent to which its enactments preempt state law; (2) field preemption, where Congress's regulation of a field is so pervasive or the federal interest is so dominant that an intent to occupy the entire field can be inferred; and (3) conflict preemption, where state law stands as an obstacle to the accomplishment of the full purposes and objectives of a federal statute. *25 Residents of Sevier County v. Ark. Hwy. & Transp. Comm'n*, 330 Ark. 396, 954 S.W.2d 242 (1997). In any preemption analysis, the overriding principle guiding our review is whether Congress intended to preempt state law. *Id.* The burden is on the moving party to prove preemption. *Hale v. State*, 336 Ark. 345, 985 S.W.2d 303 (1999).

GSS does not argue that 15 U.S.C. § 717f(h) expressly preempts applicable state law. In addition, although GSS asserts that Congress intended to "occupy the whole field" by virtue of the NGA, GSS admits that section 717f(h) explicitly incorporates the use of state practice and procedure in an action for condemnation. However, because this federal statute does not expressly provide for the procedure used by CenterPoint in this case pursuant to Ark. Code Ann. § 18-15-1206, which GSS refers to as a "quick-take," GSS argues that this particular provision conflicts with the federal statute and is preempted.

GSS's argument that the procedure used by CenterPoint pursuant to Ark. Code Ann.

§ 18-15-1206 is preempted is not persuasive because 15 U.S.C. § 717f(h) contains no language to indicate Congress's intention to do so; instead, it specifically contemplates the use of state condemnation procedure in proceedings under the federal statute. GSS cites *Transwestern Pipeline Co. v. 17.19 Acres of Property Located in Maricopa County*, 550 F.3d 770 (9th Cir. 2008), as support for its argument that "quick-take" procedures are prohibited under 15 U.S.C. § 717f(h). However, that case can be distinguished, as it involved the appellant's use of a preliminary injunction, which is particularly disfavored under the law, and did not involve state condemnation procedures. *Id*. The court in that case held that the appellant should have obtained an order of condemnation before taking possession of the property. *Id*.

Here, as opposed to the procedure used in *Transwestern*, CenterPoint filed a petition for condemnation and a declaration of taking, which were granted, and an order of possession was issued by the circuit court after the estimated amount of just compensation had been deposited into the registry of the court, as authorized by Ark. Code Ann. § 18-15-1206. Thus, GSS has failed to meet its burden of showing that the state statutory procedures used by CenterPoint were preempted by the provisions of the NGA, and the circuit court was correct in granting summary judgment on this issue. We therefore affirm on this point.

Much of GSS's third point on appeal restates its arguments related to preemption and has no merit for the reasons stated above. However, GSS also argues that CenterPoint failed to negotiate in good faith as required by 15 U.S.C. § 717f(h) and that the circuit court erred in granting summary judgment on this claim because issues of material fact remain to be decided.

In support of CenterPoint's motion for summary judgment, it provided excerpts from the depositions of Wright and Brinker demonstrating that CenterPoint engaged in six or seven months of negotiations with GSS's agent, Collins, and that it agreed not to open cut the putting greens on the property on Collins's request. Further, while CenterPoint did not agree to reroute the entire pipeline, it did negotiate with Collins to reroute the line around Collins's future home site. GSS asserted in response to CenterPoint's motion that it had offered reasonable alternative routes for the pipeline in order to minimize damage to the golf course. However, the evidence offered by CenterPoint showed that the proposed route of the new easement ran alongside the existing twenty-foot easement in favor of CenterPoint, which had been in place long before GSS purchased the property in 2003.

As CenterPoint argues in its brief, Arkansas law provides that it is no defense that the company could have chosen another location for a right-of-way, as those invested with the power of eminent domain for a public purpose are vested with broad discretion with respect to the particular route, line, or location, and can choose their own location according to their own views of what is best or most expedient; this discretion cannot be controlled by the courts in the absence of fraud, bad faith, or gross abuse of discretion. *Pfeifer v. City of Little Rock*, 346 Ark. 449, 57 S.W.3d 714 (2001); *Cloth v. Chicago, R.I. & R. Co.*, 97 Ark. 86, 132 S.W. 1005, 1007 (1910). Instead, court proceedings following eminent-domain actions are strictly to determine compensation to be paid the landowner for the land taken. *Niemeyer & Darragh v. Little Rock Junction Ry.*, 43 Ark. 111 (1884). CenterPoint demonstrated in its motion for summary judgment and supporting documents that it had negotiated in good faith

with GSS as required by 15 U.S.C. § 717f(h), and GSS has failed to demonstrate that there remain unresolved issues of material fact on this issue.

GSS also contends under this point on appeal that CenterPoint acted ex parte in obtaining its order of possession in this case and that this violated GSS's constitutional due-process rights and its rights under the Arkansas Civil Rights Act of 1993. As GSS asserts, our state constitution provides that "[t]he right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor." Ark. Const. art. 2, § 22. Similarly, article 12, section 9 states that no property or right of way shall be appropriated to the use of any corporation until full compensation therefor shall first be made to the owner in money, or first secured to him by a deposit of money, which compensation is to be determined by a jury of twelve men in a court of competent jurisdiction as prescribed by law.

However, as CenterPoint responds in its brief, it complied with the condemnation procedures set forth in Ark. Code Ann. § 18-15-1204, which provides for a trial by jury, and § 18-15-1206, which provides for a deposit of money to compensate the landowner. Further, the procedures in these statutes have been found to fully satisfy both substantive and procedural due-process standards. *DeSalvo v. Ark. La. Gas Co.*, 239 F. Supp. 312 (E.D. Ark. 1965). While GSS asserts in its brief that CenterPoint paid into the registry of the court only 62% of the just compensation for the taking, the jury awarded GSS $64,000, the same amount that CenterPoint had deposited, and GSS does not argue on appeal that this award was insufficient.

SLIP OPINION

Although GSS argues that its property could not be condemned without first giving it proper notice such that it could have its day in court, it was served with CenterPoint's petition for condemnation, declaration of taking, and the order of possession. GSS then filed an answer to the petition, as well as a motion for preliminary injunction, which it voluntarily withdrew after a hearing. Also, although GSS argues that the order of possession was entered before the summons was served, prior notice was not required under Ark. Code Ann. § 18-15-1206. Further, the cases cited by GSS are inapposite, as in *Arkansas State Highway Commission v. French*, 246 Ark. 665, 439 S.W.2d 276 (1969), the landowner did not receive compensation for the property or notice of the condemnation proceeding by either legal process or entry upon the land. Also, in *Ex parte Reynolds*, 52 Ark. 330, 12 S.W. 570 (1889), the court held that notice was required of the deposit of money into the registry of the court, although notice was waived where the landowner had made an appearance in the action. Here, GSS was aware of the condemnation action, was served with all relevant pleadings and orders, and fully participated in the action by filing an answer, motions for preliminary injunction, and a motion to dismiss. Under these circumstances, the circuit court did not err in granting summary judgment to CenterPoint on GSS's counterclaims, and we affirm.

Affirmed.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** The circuit court abused its discretion in refusing to allow CSS to inquire into the valuation and methodologies use by Centerpoint's appraiser, John David Stone. This evidence necessarily would have been used

to cross-examine Stone. The issue was simple and obvious: why did Stone not include in his real estate "comparables" land owned by Green, which is contiguous to CSS's property, that he had appraised at a significantly higher value? In this quintessential "battle of the experts," this inquiry was relevant because it could have been used to test the competence and even the credibility of Centerpoint's appraiser.

Likewise, the majority is wrong to find that it was appropriate for the circuit court to exclude evidence in accordance with Rule 26 of the Arkansas Rules of Civil Procedure. While it is true that CSS failed to disclose Stone's appraisal, as noted previously, Stone was Centerpoint's expert. There is no indication in the record that CSS's expert, Michael Pearce, intended to use Stone's appraisal in the Green case as part of his methodology. Accordingly, CSS had no obligation to supplement its discovery responses.

It is worth emphasizing that in light of Stone's strikingly low appraisal of CSS's property—approximately $200,000 lower than the appraisal by CSS's expert—exclusion of the Green property from Stone's list of comparable real estate, particularly when it was contiguous to CSS's land, is a point that begged cross-examination. This case should be reversed and remanded for a new trial.

*Huffman Butler, PLLC*, by: *Bryan R. Huffman*, for appellant.

*Smart & Stone, PLLC*, by: *Phillip A. Stone*, for appellee.