SLIP OPINION

Cite as 2016 Ark. 397

# SUPREME COURT OF ARKANSAS

No. CV–15–900

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION; ORGANIZATION UNITED FOR RESPECT AT WALMART ("OUR WALMART"); AND JOHN DOES 1-10　　　APPELLANTS<br><br>V.<br><br>WAL-MART STORES, INC.; WAL-MART STORES ARKANSAS, LLC; WAL-MART STORES EAST, LP; WAL-MART REALTY COMPANY; WAL-MART REAL ESTATE BUSINESS TRUST; AND SAM'S WEST, INC.　　　　　APPELLEES | Opinion Delivered: November 17, 2016<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [CIV-2013-0709-4]<br><br>HONORABLE JOHN R. SCOTT, JUDGE<br><br>AFFIRMED AS MODIFIED. |

**ROBIN F. WYNNE, Associate Justice**

United Food and Commercial Workers International Union (UFCW), Organization United for Respect at Walmart ("OUR Walmart"), and John Does 1-10 (collectively, appellants or the Union) appeal from the Benton County Circuit Court's order (1) granting the Walmart plaintiff-appellees[1] a permanent injunction prohibiting appellants from trespassing on their private property for non-shopping purposes and (2) issuing a declaratory judgment that appellants commit trespass when they enter Walmart's private property for non-shopping purposes. On appeal, the Union argues that (1) the National Labor Relations

---

[1] We will refer to the appellees collectively as "Walmart" in this opinion.

SLIP OPINION

Act (NLRA) preempts Walmart's law-suit under the Supremacy Clause; (2) the circuit court erred in enjoining appellants from entering parking lots and sidewalks that Walmart does not presently hold the right to exclusively possess because those areas are subject to broad commercial easements; and (3) the injunction and declaration prohibiting appellants' entry onto Walmart property for "any non-shopping purpose" is overly broad. We find merit in appellants' third point on appeal and affirm the circuit court's order as modified in this opinion.

This case is a continuation of litigation that has been ongoing between these parties both in Arkansas and across the nation. UFCW is a national labor organization. OUR Walmart is a subsidiary of UFCW; it is an association of current and former Walmart employees ("associates") and their supporters whose purpose is, in part, to help associates on issues related to their employment. The stated purpose of the demonstrations at issue in this case was to persuade Walmart to improve working conditions, to reinstate workers who Walmart had terminated for speaking out for better working conditions, and to stop retaliating against associates who speak out. Appellants have coordinated demonstrations in Arkansas at Walmart's home office in Bentonville and inside Walmart stores and on the adjacent sidewalks and parking lots as follows: June 16, 2011, at the Walmart home office (approximately 100 demonstrators); October 12, 2011, at the Walmart home office (approximately 100 demonstrators); May 31, 2012, at the Walmart home office (approximately 30 demonstrators); October 10, 2012, at the home office (approximately 100 demonstrators), at Walmart Store 1 in Rogers (approximately 100 demonstrators), and at Walmart Store 1 in Bentonville (approximately 100 demonstrators); June 1, 2013, at

Walmart Store 5 in Conway (approximately 40 demonstrators) and at Walmart Store 16 in Van Buren (approximately 15 demonstrators). Demonstrators included both associates and non-associates. Walmart informed appellants both during the demonstrations and via cease-and-desist letters that they were not permitted to engage in demonstrations or other non-shopping activities on its property. Appellants stipulated at trial that, absent an injunction, they intended to continue to hold similar demonstrations on Walmart property in Arkansas.

In March 2013, Walmart filed an unfair-labor-practice (ULP) charge with the National Labor Relations Board essentially alleging that UFCW had violated Section 8(b)(1)(A) of the NLRA[2] with its in-store demonstrations, "by which the UFCW restrained and coerced employees in the exercise of their Section 7 rights (which includes the right to refrain from supporting the UFCW)."[3] Walmart amended the charge on May 21, 2013, to narrow its claim and allege only that UFCW had violated Section 8(b)(1)(A) of the NLRA by making threats of violence and attempting to make improper payments to employees to yield to UFCW's wishes. On May 14, 2013, Walmart filed a complaint in the Benton County Circuit Court alleging the tort of trespass and seeking injunctive and declaratory relief.[4] The circuit court entered a temporary restraining order (TRO) following a brief hearing, and the Union subsequently stipulated to the entry of a preliminary injunction. The Union later filed a motion to dissolve or modify the preliminary injunction, and the circuit court denied the motion.

---

[2] *See* 29 U.S.C. § 158(b)(1)(A).
[3] *See* 29 U.S.C. § 157.
[4] In September 2013, Walmart amended its complaint to add subsidiaries and related business entities as plaintiffs.

In an interlocutory appeal, this court affirmed the circuit court's order denying the Union's motion to dissolve or modify the stipulated preliminary injunction entered in this case. *United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*, 2014 Ark. 517, 451 S.W.3d 584. We did not reach the merits of the Union's argument because the circuit court had at least two grounds for denying the motion (judicial estoppel and the merits of the federal preemption argument) but the Union had addressed only the preemption argument on appeal.

A two-day bench trial was held in January 2015. Before the trial began, the Union renewed its motion to dismiss based on its argument that the law-suit was preempted under federal law by the NLRA; the circuit court disagreed and denied the Union's motion. The motion was renewed and again denied at the close of Walmart's case and at the close of the Union's case. The evidence at trial included the parties' stipulations of fact, videos of the demonstrations, and the testimony of witnesses to the demonstrations (including a senior manager in labor relations for Walmart, Walmart store managers, a customer, and a police officer). Because the Union does not contend that the evidence was insufficient to support the circuit court's findings that the demonstrations constituted trespass and that Walmart was entitled to a permanent injunction and a declaratory judgment, a detailed account of the evidence is unnecessary. Suffice it to say, the parties agreed on many facts but disagreed over the extent to which the demonstrations disrupted Walmart's operations.

On April 9, 2015, the court entered an order finding in pertinent part as follows:

Defendants' demonstrations involved hundreds of people engaged in: chanting; banging Walmart merchandise like drums; congregating in the parking lot; congregating on the aproning sidewalk; causing customers to swerve around demonstrators; song and dance routines on the sales floor; picketing; parades; rallies;

hand billing; and interfering with customer shopping activity. . . . Defendants refused to leave when requested. Defendants' actions have surpassed merely handing out information and are in the sphere of causing irreparable harm.

Plaintiffs argue that the activities stated above upset customers by interfering with their shopping experience and can ultimately deter customer shopping in general. It is impossible to know how much business has been affected by these multiple instances of disruption or how much business would be affected if Defendants are not restrained from this type of conduct. Plaintiffs have established that they are threatened with irreparable harm by Defendant's actions. The harm to Plaintiffs is outweighed by any injury to Defendants because the injunction is very limited and restrictive in its terms. The injunction will prohibit any non-employees from engaging in non- shopping activities while on Walmart's private property, both owned and leased, in Arkansas. Walmart's invitation to the public to use its property is not unrestricted, but rather it is meant for customers to do business on its property. Plaintiffs do not make invitations to authorize demonstrations, parades, or public events. Rather their invitation is to use the premises for shopping purposes or in the furtherance of such purposes. Any retail easements are not made to invite general public use for non- shopping purposes, but rather to provide public access to retailers to shop, work, and conduct lawful business. These permissive easements and invitations benefit public interest by providing the means to obtain merchandise and satisfy general needs.

The circuit court found that Walmart had met the requirements for a permanent injunction and a declaratory judgment. The injunction prohibits any non-employee appellant-defendant from engaging in any non-shopping activities on Walmart's private property, both owned and leased, in Arkansas. The circuit court declared that appellants' entrance onto Walmart private property for non-shopping purposes constitutes a trespass. The Union timely appealed.

I. *Federal Preemption*

The first issue on appeal is whether the NLRA preempts Walmart's law-suit under the Supremacy Clause of the United States Constitution. The issue of preemption is a question of law, and this court reviews questions of law de novo on appeal. *Selmon v. Metro. Life Ins. Co.*, 372 Ark. 420, 424, 277 S.W.3d 196, 200 (2008). The Union argues that the

present law-suit is preempted because the ULP charge that Walmart filed with the National Labor Relations Board (NLRB) and the law-suit filed in circuit court are the same in several fundamental respects—containing the same legal theory, facts, and allegations, and seeking the same remedy. The Union further argues that Walmart conceded that the NLRA preempts its trespass claim when it filed the ULP charge arguing that the NLRA prohibits the conduct at issue here. Finally, the Union contends that Walmart's law-suit does not fit the deeply rooted local interest exception to NLRA preemption because the exception applies only to violent conduct.

The doctrine of federal preemption is based on the United States Constitution's Supremacy Clause. *GSS, LLC v. CenterPoint Energy Gas Transmission Co.*, 2014 Ark. 144, 11, 432 S.W.3d 583, 590 (citing U.S. Const. art. 6, cl. 2). In any preemption analysis, the overriding principle guiding our review is whether Congress intended to preempt state law. *Id*. The burden is on the moving party to prove preemption. *Id*. Regarding NLRA preemption, the United States Supreme Court has stated:

> Although the NLRA itself contains no express pre-emption provision, we have held that Congress implicitly mandated two types of pre-emption as necessary to implement federal labor policy. The first, known as *Garmon* pre-emption, see *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S. Ct. 773, 3 L. Ed. 2d 775 (1959), "is intended to preclude state interference with the National Labor Relations Board's interpretation and active enforcement of the 'integrated scheme of regulation' established by the NLRA." To this end, *Garmon* pre-emption forbids States to "regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits."[5]

*Chamber of Commerce v. Brown*, 554 U.S. 60, 65 (2008) (citations omitted).

---

[5] The second type of preemption under the NLRA is inapplicable to the present case.

SLIP OPINION

In *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, 436 U.S. 180 (1978), the United States Supreme Court held that the NLRA did not preempt Sears's trespass action in state court to enjoin the union from picketing on its property. Sears was having carpentry work performed by non-union carpenters, and in response, the carpentry union established peaceful picket lines on Sears's property and refused to leave absent legal action. The *Sears* Court analyzed whether preemption was justified under either the "arguably protected" or the "arguably prohibited" branch of the *Garmon* doctrine.[6] *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959). The Court wrote:

> The Court [in *Farmer v. Carpenter*, 430 U.S. 290 (1977),] identified those factors which warranted a departure from the general pre-emption guidelines in the "local interest" cases. Two are relevant to the arguably *prohibited* branch of the *Garmon* doctrine. First, there existed a significant state interest in protecting the citizen from the challenged conduct. Second, although the challenged conduct occurred in the course of a labor dispute and an unfair labor practice charge could have been filed, the exercise of state jurisdiction over the tort claim entailed little risk of interference with the regulatory jurisdiction of the Labor Board. Although the arguable federal violation and the state tort arose in the same factual setting, the respective controversies presented to the state and federal forums would not have been the same.

*Sears*, 436 U.S. at 196–97. The Court further stated that the "critical inquiry" is whether the controversy presented to the state court is identical to or different from that which could have been presented to the Labor Board. 436 U.S. at 197. The Court reasoned that the issue that Sears might have presented to the Board (the objective of the picketing) was unrelated to the issue before the state court (simple trespass—the location of the picketing), and therefore there was no federal preemption for the "arguably prohibited" trespass case.

---

[6] In the present case, there is no allegation by the Union that the activity at issue is "arguably protected" under the NLRA.



In the present case, the Union attempts to distinguish *Sears* on the ground that, here, Walmart did file an unfair labor practice charge with the NLRB. The Union argues that this was a concession by Walmart that the NLRA preempts. However, Walmart amended its unfair-labor-practice charge significantly and excluded the instances of trespassory conduct in Arkansas, and therefore there is no danger of a conflicting ruling by the NLRB. The bulk of the Union's argument on this point is that the ULP charge and the law suit are "identical" for NLRA preemption purposes because they are the same in several fundamental respects: conduct/facts; legal theory; and remedy. However, the ULP charge alleged unfair labor practices, while the law-suit alleged common-law trespass. The NLRB does not regulate trespass, and the unfair labor practice allegation would not turn on where the challenged conduct occurred. Thus, we agree with Walmart that the controversy presented to the circuit court is not identical to, but is different from, that which could have been presented to the Labor Board. *Sears* is on point and leads to the conclusion that the present law suit is not preempted by the NLRA. Finally, we reject the Union's argument that Walmart's law suit does not fit the deeply rooted local interest exception to NLRA preemption because the exception applies only to violent conduct. *Sears* involved only peaceful protests, and just as in *Sears*, the controversy presented to the state court in the present case is different from that which could have been presented to the Labor Board. Thus, "[t]he reasons why pre-emption of state jurisdiction is normally appropriate when union activity is arguably prohibited by federal law plainly do not apply to this situation; they therefore are insufficient to preclude a State from exercising jurisdiction limited to the trespassory aspects of that activity." *Sears*, 436 U.S. at 198.

The preemption issue presented in this appeal has been extensively litigated in other jurisdictions. We note that appellate courts in California, Colorado, Florida, Maryland, and Texas have issued opinions in similar cases between these parties and expressly rejected the Union's preemption argument. *Walmart Stores, Inc. v. United Food & Commercial Workers Int'l Union*, No. B259926, 2016 WL 5957279 (Cal. Ct. App. Oct. 14, 2016); *Wal-Mart Stores, Inc. v. United Food & Commercial Workers Int'l Union*, No. 14CA2061, 2016 WL 2605737 (Colo. App. May 5, 2016), *cert. denied*, No. 16SC478, 2016 WL 5723926 (Col. Oct. 3, 2016); *United Food & Commercial v. Wal-Mart Stores, Inc.*, 192 So. 3d 585 (Fla. Dist. Ct. App. 2016); *United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*, 137 A.3d 355 (Md. App. 2016), *cert. granted*, No. 242, 2016 WL 5723986 (Md. Sept. 2, 2016); *Walmart Stores, Inc. v. United Food & Commercial Workers Int'l Union*, No. 02–15–00374-CV, 2016 WL 6277370 (Tex. Ct. App. Oct. 27, 2016). Only Washington has found that Walmart's state-court suit was preempted by the NLRA. *Wal-Mart Stores, Inc. v. United Food & Commercial Workers Int'l Union*, 190 Wash. App. 14, 354 P.3d 31 (2015).

In sum, we agree with the majority of jurisdictions that have decided this issue. We hold that the NLRA does not preempt Walmart's trespass law suit and affirm the circuit court's ruling on this point.

II. *Common Areas that Walmart Does Not "Exclusively Possess"*

For its second point on appeal, the Union argues that to claim trespass on shopping-center common areas that Walmart owns but does not presently hold the right to exclusively possess, Walmart must prove that they (appellants) unreasonably interfered with its rights to use its property. At issue are shopping-center common areas, such as parking lots and

sidewalks that Walmart owns, but that are subject to broad, nonexclusive easements granted to other businesses in the shopping center for use by their workers, customers, and invitees. Citing argument by Walmart's counsel in a Colorado case, appellants state that Walmart has conceded that for its building-only leased stores (where Walmart has a nonexclusive easement to use the common areas) it does not have the right to exclusively possess the common areas necessary to claim trespass based on appellants' mere presence and must instead show that appellants unreasonably interfere with Walmart's use of those areas.

We first note that appellants do not cite a single case that stands for the proposition they are advancing. Instead, they make the irrelevant point that Walmart cannot exclusively possess or use these common areas in a way that would interfere with the easement-holders' rights. They rely on cases that concern leased property, not non-exclusive easements. *E.g.*, *Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1 (Tex. 2008) (owner of leased mineral rights may only sue for trespass alleging damage to his reversionary interest). Here, Walmart has retained the right to possess its common areas, and its possessory rights include the right to exclude those who are not lawfully present. We affirm the circuit court's ruling on this point.

III. *Scope—"All Non-shopping Activity"*

Finally, the Union argues that the injunction and declaration are overly broad as to their scope in that they prohibit "all non-shopping activity," which includes non-disruptive conduct that Walmart neither objected to nor proved cause it irreparable harm. Walmart responds that any activity on Walmart property that falls outside the scope of Walmart's limited invitation to the public for conduct consistent with shopping is an unlawful civil

trespass that can be enjoined. Walmart argues that "[t]here should be no loophole in the injunction for Defendants to exploit." We agree with the Union on this point and modify the circuit court's order as set out below.

Irreparable harm is the touchstone of injunctive relief. *Delancy v. State*, 356 Ark. 259, 265, 151 S.W.3d 301, 305 (2004). Arkansas Rule of Civil Procedure 65(d)(1) (2015) governs the contents of injunctions and provides as follows: "Every order granting an injunction and every restraining order must (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Like a statute describing a crime, the court's injunction must be sufficiently definite so that one bound by it will know what act or acts are either required or enjoined. 2 *David A. Newbern* et al., *Arkansas Civil Practice and Procedure* § 35:6 (5th ed.). Given the requirement of proving irreparable harm coupled with Rule 65's specificity requirement, we agree with the Union that the circuit court order's injunction and declaration encompassing *all* non-shopping activity or conduct is simply too broad on this record.

Based on the above, we hereby modify the circuit court's order to include the following language after the words "non-shopping activities" and "non-shopping conduct" on page 3 and "non-shopping purposes" on page 5: "such as picketing, patrolling, parading, demonstrations, "flash mobs," handbilling, solicitation, and manager confrontations." This language was included in the preliminary injunction and properly limits the scope of the order to those activities that were proven by Walmart to cause irreparable harm.

Affirmed as modified.

BAKER and GOODSON, JJ., concur.

HART, J., concurs in part and dissents in part.

**COURTNEY HUDSON GOODSON, Justice, concurring.** I concur in the decision to affirm on the preemption issue. I write separately because my reasoning for doing so is different from that expressed in the majority's opinion. In my view, consideration of this issue is barred by the law-of-the-case doctrine. Therefore, any discussion of the merits of this question is completely unwarranted.

Previously, and in the course of this same lawsuit, the Union filed a motion to dissolve the preliminary injunction entered by the circuit court. In this motion, it argued that the circuit court was required to rescind the preliminary injunction and to dismiss the case on the ground that the circuit court lacked subject-matter jurisdiction because Walmart's claim of common-law trespass was preempted by the NLRA. In response, Walmart asserted that the Union was judicially estopped from challenging the preliminary injunction, and it also argued that the preemption argument was without merit. The circuit court denied the Union's motion based on both grounds advanced by Walmart.

The Union appealed the circuit court's decision, as is permitted by Rule 2(a)(6) of the Arkansas Rules of Appellate Procedure–Civil. Its sole point for reversal was the contention that the NLRA preempted Walmart's trespass claim. This court affirmed the circuit court's ruling in its entirety. *United Food & Commercial Workers Int'l v. Wal-Mart Stores, Inc.*, 2014 Ark. 517, 451 S.W.3d 584. We upheld the circuit court's order because the Union had not contested the court's ruling on judicial estoppel, which was an alternative basis for its denial of the Union's motion. In so holding, this court applied the familiar rule

that when a circuit court bases its decision on more than one independent ground, and the appealing party challenges fewer than all of those grounds on appeal, we affirm without addressing any of the grounds. *See id.* This is a matter of common sense. When a party does not challenge all of the independent rulings, there can be no reversible error, even if we find merit in the issue that is raised on appeal. This is so because, without challenge, those independent reasons underlying the circuit court's decision alone provide a basis for upholding the decision.

On remand, and despite our affirmance, the Union continued to argue that preemption bars this lawsuit. Once again, the circuit court rejected this argument. Now, in this appeal, and for a second time, the Union advances this argument for reversal. However, the doctrine of law of the case prohibits a court from reconsidering issues of law or fact that have already been decided on appeal. *Green v. George's Farms, Inc.*, 2011 Ark. 70, 378 S.W.3d 715. The doctrine provides that a decision of an appellate court establishes the law of the case for trial upon remand and for the appellate court itself upon subsequent review. *Diamante, LLC v. Dye*, 2015 Ark. 243, 464 S.W.3d 459. The doctrine serves to effectuate efficiency and finality in the judicial process, and its purpose is to maintain consistency and to avoid reconsideration of matters once decided during the course of a single, continuing lawsuit. *Carter v. Cline*, 2013 Ark. 398, 430 S.W.3d 22. The law-of-the-case doctrine specifically provides that in a second appeal, the decision of the first appeal is conclusive of every question of law or fact decided in the former appeal and also of those questions that might have been, but were not, presented. *Kelly v. Kelly*, 2014 Ark. 543, 453 S.W.3d 655. The doctrine is binding on the appellate court whether the decision in the

first appeal is right or wrong. *Diamante, supra.* This court and our court of appeals have recognized that the doctrine applies to issues concerning subject-matter jurisdiction. *R.K. Enters., LLC v. Pro-Comp Mgmt., Inc.*, 372 Ark. 199, 272 S.W.3d 85 (2008). In *R.K.*, we stated,

> Nationwide posits that subject-matter jurisdiction can be raised more than once. We disagree. Once that issue has been decided by this court, it cannot be raised again. Were this not the case regarding issues raised about subject-matter jurisdiction, this court could be called upon to decide the same issue multiple times. This we will not do.

*Id.* at 204, 272 S.W.3d at 88.

In this case, and prior to the first appeal, the preemption issue was raised, developed, and ruled on by the circuit court. Thus, the question was ripe for consideration on appeal, and this court affirmed because the Union had failed to demonstrate reversible error. Thus, there was an adjudication of the matter in the first appeal. Consequently, when the case returned to the circuit court, that court was not at liberty to revisit the issue in light of our affirmance. In this second appeal, we are also bound by our previous opinion upholding the circuit court's ruling, and we should not consider the issue anew. For this reason, I concur in the decision to affirm.

BAKER, J., joins.

**JOSEPHINE LINKER HART, Justice, concurring in part and dissenting in part.** I join the majority's opinion except where it undertakes the job of rewriting the permanent injunction. I agree that, as written, the permanent injunction is overbroad. However, I believe that this court errs when it does not remand this case to the circuit court to narrow the scope of the injunction.

The language selected by the majority was gleaned from the preliminary injunction, which is the same as Wal-Mart's temporary restraining order. This method of rewriting the injunction gives appellees everything they wanted without an adversarial hearing. Recall that the preliminary injunction was acquiesced to by the union only because it was unable to get its legal team to the preliminary-injunction hearing. Recall also that the union's subsequent attempt to challenge the preliminary injunction was rebuffed by the circuit court because the union did not allege any changed circumstances, and this court affirmed on procedural grounds without addressing the merits on appeal. *United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*, 2014 Ark. 517, 451 S.W.3d 584. How the language selected by the majority narrows the scope of the injunction is not apparent to me.

Further, picketing, patrolling, parading, demonstrations, hand billing, and solicitation are all protected activities under the right circumstances. It behooves this court to return this case to the circuit court where an order that clearly does not run afoul of the National Labor Relations Act can be crafted with the assistance of the litigants.

*Appellate Solutions, PLLC d/b/a Riordan Law Firm*, by: *Deborah Truby Riordan*; and *George Wiszynski*, *Pro Hac Vice*; and *Joey Hipolito*, *Pro Hac Vice*, United Food & Commercial Workers International Union, for appellants.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Christopher Plumlee*; and *Steptoe & Johnson LLP*, by: *Steven D. Wheeless, Pro Hac Vice*, and *Douglas D. Janicik, Pro Hac Vice*, for appellees.